IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMES E. ROSE, JR., : | |
|     Plaintiff, : | |
| : | |
| v. : | CIVIL ACTION NO. 22-CV-0335 |
| : | |
| COLEEN CHRISTIAN, *et al.*, : | |
|     Defendants. : | |

**MEMORANDUM**

**SCHMEHL, J. /s/JLS**                                                                                     **JUNE 17 , 2022**

Plaintiff James E. Rose, Jr., a prolific litigant in this Court, brings this *pro se* civil action seeking damages for alleged violations of his civil rights. Currently before the Court are Rose's Complaint (ECF No. 2) and his Motion for Leave to Proceed *In Forma Pauperis* (ECF No. 1). Because it appears that Rose is unable to pay the filing fee, the Court will grant him leave to proceed *in forma pauperis*. For the following reasons, Rose's Complaint will be dismissed with prejudice.

I.     FACTUAL ALLEGATIONS[1]

Rose names the following Defendants in this civil action: (1) Coleen Christian,[2] (2) the Bucks County Prothonotary's Office; and (3) Bucks County. (Compl. at 1.) While Rose's

---

[1] The factual allegations set forth in this Memorandum are taken from Rose's Complaint. (*See* ECF No. 2.) Where the Court cites a page number rather than a paragraph number, the Court will adopt the pagination supplied by the CM/ECF docketing system. Additionally, attached to the Complaint is a separately numbered document Rose entitled "Extenuating Facts". (*See* Compl. at 14-21.) Citations to the paragraph numbers in the "Extenuating Facts" portion of the Complaint contain the designation "E.F." in front of the paragraph symbol and number such as "E.F. ¶¶ 1-3".

[2] The Court takes judicial notice that Coleen Christian is the Prothonotary for the Court of Common Pleas of Bucks County. *See* https://www.buckscounty.gov/directory.aspx?EID=521

Complaint details a number of seemingly unrelated events that occurred over a decade ago, at the center of the Complaint is Rose's contention that he has been wrongfully denied the opportunity since approximately 2011 to have contact with, and custody of, his minor granddaughter, referred to in the Complaint as S.R.  (Compl. ¶¶ 1, 6, 10, 18-21, 24, 29, 35; *see also* E.F. ¶¶ 1-3, 8, 18, 25.)  Rose asserts that he "raised . . . [S.R.] for the first 3 years of her life[,]" (*see* E.F. ¶ 4), and alleges that his subsequent lack of contact with his granddaughter is the result of a scheme coordinated that same year designed to "cover up" the death of Rose's adult son, Jason Rose, S.R.'s father.[3]  (Compl. ¶¶ 1-2, 6, 18-21, 24, 29; *see also* E.F. ¶¶ 1-3, 6, 8, 28-30.)  Rose dedicates a substantial portion of the Complaint to factual allegations regarding Jason's death in 2011 and Rose's belief that Jason was murdered as a result of a "contract hit" that was "issued" by Jason's soon-to-be ex-wife, Jessica McNeil, who allegedly designed the "hit" to look like an accidental drug overdose based on Jason's past use of illegal drugs.  (Compl. ¶¶ 1-15, 17-23, 26-28, 47, 49, 59-62.)

Rose alleges that he learned of Jason's death at approximately 1:00 a.m., and that S.R. was "released" to his care several hours later at approximately 8:00 a.m.  (*Id.* ¶ 6.)  That morning while in Rose's care, S.R. allegedly told Rose and several other adults in his home that her father was "killed by 2 Black men that held [her] father in the bathroom, and that [S.R.] had to wait in the bedroom" and that these two men "had guns on her daddy and would not let her in the

---

(last viewed June 16, 2022); *see also Castro-Mota v. Smithson*, No. 20-940, 2020 WL 3104775, at *1 (E.D. Pa. June 11, 2020) (stating that the Court may consider matters of public record when conducting a screening under § 1915).  Other than list Christian in the caption of the Complaint and in the last paragraph where he demands money damages from her, Rose does not otherwise mention Christian by name or allege she was personally involved in the events he describes.

[3]  It appears that S.R. was approximately three years old at the time of Jason Rose's death in 2011.  (Compl. ¶ 60.)

2

bathroom." (*Id.* ¶¶ 7-8.)  Rose contends that S.R., "is a material witness to the death of her father" and has "direct knowledge concerning this contract hit[.]"  (*Id.* ¶¶ 18, 26; *see also* ¶¶ 7-8, 20-21, 29, 47.)  Based on his own knowledge of Jason's death, in combination with S.R.'s statements, Rose believes that Jason was held at gunpoint by these men and "forced to snort heroine" which resulted in an overdose, and ultimately, his death.  (*Id.* ¶¶ 8-10.)  Rose claims that he called McNeil and asked her what the child was talking about, and that "[w]ithin a matter of 2 hours" of that call, "S.R. was removed from [his] home, and he was never to see her again." (*Id.* ¶ 10.)  As a result, Rose came to believe that McNeil "had his son murdered, by forcing him to snort a lethal dose of heroine[.]"  (*Id.*)

Rose alleges that he subsequently sought custody of S.R. "so that the police could question her," but that "Jessica McNeil called down to the Bucks County Courthouse and spoke to Judge Rubenstein" to make "absolutely sure" Rose "would not be able to get his hands on" S.R. (*Id.* ¶¶ 18, 24.)  Rose contends that whatever McNeil said to the judge "was devastating" to Rose's "custody rights" because after that phone call, the judge "came back on the bench and said that the case was over, [Rose] does not get custody, [and] custody goes back to the child's" mother, Stevie Harris.  (*Id.* ¶¶ 18-19, 21.)[4]  Rose further alleges that he tried to appeal Judge Rubenstein's decision and that the "Prothonotary's Office blocked . . . [him] from taking an appeal to the Superior Court."  (*Id.* ¶ 32.)

---

[4] (*See also id.* ¶ 29) ("If the minor child was allowed to stay with the Plaintiff, there is no question that the minor child would have been very helpful to the PA State Police and Detective Krause.  This is why Jessica McNeil did something to get the minor child removed from the Plaintiff's home and custody."); (*see also id.* ¶ 46) ("The custody case was rigged against the Plaintiff through the covert actions of Jessica McNeil[.]").

3

Rose further alleges that he is currently "being denied the right to have a hearing in State Court" which he attributes to "racial animosity[.]" (*Id.* ¶ 33.) Specifically, Rose claims that he filed a "complaint for visitation [over] 7 months ago on 6/2/2021" but that the "Prothonotary's Office is just sitting on [his] complaint and motions." (*Id.* ¶¶ 63-64.) Rose alleges that this delay is the result of racial animosity because "[a]ll the people involved in this case [apart from Rose and S.R.] are White" and "White Court personnel" are preventing S.R. "from having any contact with her Black family[.]" (*Id.* ¶¶ 34, 42, 63-64.) Rose alleges that the "Bucks County Prothonotary or Clerk's Office has done everything in their power to block . . . [Rose] from having a hearing for visitation rights with" S.R and that "this would never happen to a White person similarly situated." (*Id.* ¶¶ 56, 64.)

Accordingly, Rose filed this lawsuit against the Defendants for allegedly "maintaining a racist practice against people of Color and for blocking the Plaintiff from being able to take an appeal some 11 years ago and for refusing to transcribe the testimony conducted in front of Judge Rubenstein." (*Id.* ¶ 57.) He adds that "the officials of Bucks County interfering with the Plaintiff's rights to see and be with his granddaughter is aiding and abetting in the cover up murder of his granddaughter's father." (E.F. ¶ 25.) Rose indicates that he brings claims for "Civil Rights Violations" including pursuant to 42 U.S.C. §§ 1983, 1985 and 1986.[5] (Compl. at 1.) He seeks damages. (*Id.* at 13; *id* ¶ 45.)

---

[5] Rose also invokes other statutes with no apparent applicability here that, accordingly, do not give rise to a claim. He cites 42 U.S.C. §§ 1981 and 1982, but those provisions do not apply to the facts alleged in the Complaint. *See McGovern v. City of Philadelphia*, 554 F.3d 114, 121 (3d Cir. 2009) (explaining that § 1983 provides "the exclusive remedy for violations of § 1981 by state actors"); *see also Goodall-Gaillard v. N.J. Dep't of Corr.*, 625 F. App'x 123, 128 (3d Cir. 2015) ("[A]s the District Court properly noted, § 1981 does not provide a private right of action against state actors."); *Brown v. Philip Morris Inc.*, 250 F.3d 789, 797 (3d Cir. 2001) (construing § 1981 and § 1982). Rose's citations to statutes establishing programs for older Americans and individuals with developmental disabilities, *see* 42 U.S.C. §§ 3001, 15081, likewise have no

II.     STANDARD OF REVIEW

The Court will grant Rose leave to proceed *in forma pauperis* because it appears that he is not capable of paying the fees to commence this civil action. Accordingly, 28 U.S.C. § 1915(e)(2)(B)(i) and (ii) require the Court to dismiss the Complaint if it is frivolous or fails to state a claim. A complaint is frivolous if it "lacks an arguable basis either in law or in fact," *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A claim is legally baseless if it is "based on an indisputably meritless legal theory." *Deutsch v. United States*, 67 F.3d 1080, 1085 (3d Cir. 1995).

Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). "At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. Additionally, a court may dismiss a complaint based on an affirmative defense such as the statute of limitations "when the statute of limitations defense is apparent on the face of the complaint." *Wisniewski v. Fisher*, 857 F.3d 152, 157 (3d Cir. 2017).

---

applicability here. It is also unclear to the Court why Rose included in his Complaint a citation to 15 U.S.C. § 15b, which provides a statute of limitations for antitrust claims.

As Rose is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

### III.   DISCUSSION

#### A. Time-Barred Claims

Federal civil rights claims under §§ 1983 and 1985 are subject to the state statute of limitations for personal injury actions. *See Wallace v. Kato*, 549 U.S. 384, 387 (2007); *Bougher v. Univ. of Pittsburgh*, 882 F.2d 74, 79-80 (3d Cir. 1989). In Pennsylvania, that limitations period is two years. *See* 42 Pa. Cons. Stat. § 5524. Claims under § 1986 are governed by a one-year statute of limitations. 42 U.S.C. § 1986.

A claim accrues "when a plaintiff has a complete and present cause of action, that is, when [he] can file suit and obtain relief." *Dique v. N.J. State Police*, 603 F.3d 181, 185 (3d Cir. 2010) (quotations omitted). In general, this means that the statute of limitations will start running at the time the plaintiff "knew or should have known of the injury upon which [his] action is based." *Sameric Corp. of Del., Inc. v. City of Phila.*, 142 F.3d 582, 599 (3d Cir. 1998). This is consistent with Pennsylvania's "discovery rule," which delays the running of the statute of limitations where "despite the exercise of reasonable diligence," a plaintiff cannot know that he is injured and by what cause. *Fine v. Checcio*, 870 A.2d 850, 858 (Pa. 2005).

The majority of Rose's allegations concern custody proceedings that took place eleven years ago or matters related to or underlying those proceedings. Rose alleges that McNeil caused him to lose custody of S.R., and that he was prevented from taking an appeal of that adverse judgment. He also alleges that he was treated unfairly because he is Black. It is apparent from the face of the Complaint that Rose knew or should have known with the exercise of reasonable

diligence of any claims based on what occurred in the custody proceedings eleven years ago at the time those proceedings transpired. (*See, e.g.*, Compl. ¶ 45 ("Approximately some 11 years went by, and now the Plaintiff, who is a lot stronger, wants to seek monetary damages from Bucks County officials who discriminated against people of Color.").) Accordingly, the statute of limitations has expired on any claims related to the custody proceedings that took place before Judge Rubenstein, including Rose's alleged inability to appeal. The Court will therefore dismiss those claims as time barred.[6]

### B. Remaining Claims

The only claims that are not time-barred relate to Rose's allegation that the Bucks County Prothonotary's Office delayed the petition for visitation that he filed on June 2, 2021, allegedly because of race discrimination.[7] (Compl. ¶¶ 63-65.) For the following reasons, Rose's claims based on this allegation fail.

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). States are not considered "persons" who may be liable under § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65-66 (1989). Furthermore, the Eleventh Amendment bars suits against a state and its agencies in federal court when the state has not waived that immunity, *id.*,

---

[6] The continuing violation doctrine does not save Rose's claims because he was aware of his injuries at the time they occurred. *Montanez v. Sec'y Pa. Dep't of Corr.*, 773 F.3d 472, 481 (3d Cir. 2014). In any event, event if these claims were timely, they fail for the reasons Rose's timely claims fail as set forth *infra* § III.B.

[7] The public docket reflects that a hearing was held in in the underlying matter on May 9, 2022, presumably addressing Rose's petition and other filings, that the court entered an order, and that an appeal was filed. *See Rose v. Harris*, No. 2008-62350 (available at https://propublic.buckscountyonline.org/PSI/v/detail/Case/5860032) (last viewed June 16, 2022).

and the Commonwealth of Pennsylvania has not waived that immunity for claims under §§ 1983, 1985 and 1986.  *See* 42 Pa. Cons. Stat. § 8521(b).  The Eleventh Amendment similarly precludes damages claims against Commonwealth employees in their official capacities.  *See Kokinda v. Pa. Dep't of Corr.,* 779 F. App'x 944, 948 (3d Cir. 2019) (*per curiam*) ("The District Court properly concluded that Kokinda's claimed violations of §§ 1983, 1985(3), and 1986 against the DOC and the individual prison staff members sued in their official capacities are barred by the Eleventh Amendment."); *Collins v. Sload*, 212 F. App'x 136, 140 n.5 (3d Cir. 2007) (*per curiam*) ("We also agree with the District Court that Eleventh Amendment immunity provided the defendants a similar shield against the claims for damages against them in their official capacities under §§ 1983, 1985, & 1986.").

The Bucks County Prothonotary's Office — which is part of the Court of Common Pleas and, thus, part of Pennsylvania's unified judicial system — and the Prothonotary in her official capacity[8] both share in the Commonwealth's Eleventh Amendment immunity and are not "persons" subject to liability under § 1983.  *Benn v. First Judicial Dist. of Pa.*, 426 F.3d 233, 241 (3d Cir. 2005) (state courts in Pennsylvania share in the Commonwealth's Eleventh Amendment immunity); *Burford v. Delaware Cty., Pa.*, No. 19-0577, 2019 WL 7048796, at *4 (E.D. Pa. Dec. 20, 2019) ("The Prothonotary's Office (and thus the Prothonotary in her official capacity) is part

---

[8] Official capacity claims are indistinguishable from claims against the entity that employs the officials.  *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690, n. 55 (1978)).  Thus, "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."  *Id.*  "To determine whether a plaintiff sued state officials in their official capacity, [a court] first look[s] to the complaints and the course of proceedings."  *Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 310 (3d Cir. 2020) (quotations omitted).  Here, the Court must construe Rose's claims against the Prothonotary as having been raised against her in her official capacity since she is not alleged to have been personally involved in the events giving rise to Rose's claims and has instead been sued "because of [her] position[]."  *Id.*

of the Delaware County Court of Common Pleas (*i.e.*, a part of the judicial system and therefore an 'arm of the state') and is not a 'person' under 42 U.S.C. § 1983."); *Malcomb v. Beaver Cty. Pa. (Prothonotary)*, No. 13-1772, 2014 WL 3892023, at *2 (W.D. Pa. July 31, 2014), *aff'd*, 616 F. App'x 44 (3d Cir. 2015) (*per curiam*) (same). Accordingly, the Court will dismiss any claims against these Defendants as legally baseless. *See Rushing v. Pennsylvania*, 637 F. App'x 55, 56 (3d Cir. 2016) (*per curiam*) (dismissing appeal as baseless when district court, among other things, dismissed plaintiff's claim against the Commonwealth on grounds of Eleventh Amendment immunity pursuant to §§ 1915(e)(2)(B)(i) and (ii)); *Smith v. Delaware*, 624 F. App'x 788, 791 (3d Cir. 2015) (*per curiam*) (concluding that district court correctly dismissed complaint as frivolous, including on Eleventh Amendment grounds).

Rose has also sued Bucks County. However, the Bucks County Court of Common Pleas and its various divisions are part of the Commonwealth's unified judicial system and are therefore agencies of the Commonwealth rather than local agencies. *See Benn*, 426 F.3d at 235 n.1 & 241. Since it appears that Rose named Bucks County as a defendant based on the mistaken belief that the county is responsible for the events that took place in his Pennsylvania state court judicial proceeding, the Court will dismiss the claims against Bucks County as implausible.[9] *See Scheib v. Pennsylvania*, 612 F. App'x 56, 59 (3d Cir. 2015) (*per curiam*) ("It

---

[9] Rose's claims fail for other reasons as well. He asserts that he is the victim of race discrimination and a conspiracy, but he has not plausibly pled that he was treated differently than others who are similarly situated because of his race nor has he plausibly alleged a basis for a judicial conspiracy. *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178 (3d Cir. 2010) ("[T]o properly plead an unconstitutional conspiracy, a plaintiff must assert facts from which a conspiratorial agreement can be inferred."); *Capogrosso v. The Supreme Court of New Jersey*, 588 F.3d 180, 185 (3d Cir. 2009) (*per curiam*) ("'A conspiracy cannot be found from allegations of judicial error, ex parte communications (the manner of occurrence and substance of which are not alleged) or adverse rulings absent specific facts demonstrating an agreement to commit the alleged improper actions.'" (quoting *Crabtree v. Muchmore*, 904 F.2d 1475, 1480-81 (10th Cir. 1990))); *Startzell v. City of Philadelphia*, 533 F.3d 183, 203 (3d Cir.

appears that [plaintiff] named the County as a defendant because she mistakenly believes that the Allegheny County Court of Common Pleas is a County entity. As the District Court correctly noted, however, the court is a Commonwealth—not County—entity. . . . Therefore, [plaintiff's] claims against the Court of Common Pleas are . . . barred by the Eleventh Amendment."); *Perez v. Borough of Berwick*, 507 F. App'x 186, 190 (3d Cir. 2012) (upholding the district court's finding that the Columbia County Probation and Parole Department was "'not part of Columbia County,' but rather 'an agency of the Commonwealth'" of Pennsylvania and recognizing that the fact "that Pennsylvania probation and parole departments are legally part of the Commonwealth's Unified Judicial District" remained true even where a probation officer testified that she "'work[ed] for Columbia County as a probation/parole officer'" and where the second amended complaint named Columbia County as a defendant and inaccurately alleged that the County "operated the . . . Probation Department").

## IV.     CONCLUSION

For the foregoing reasons, the Court will grant Rose leave to proceed *in forma pauperis* and dismiss his Complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i) and (ii). Rose will not be given leave to file an amended complaint because amendment of his claims would be futile. An appropriate Order follows, which dismisses this case.

**BY THE COURT:**

**/s/ Jeffrey L. Schmehl**
**JEFFREY L. SCHMEHL, J.**

---

2008) ("Persons are 'similarly situated' for purposes of an equal protection claim when 'they are alike in all relevant aspects.'" (emphasis omitted)). These are additional reasons for the dismissal of Rose's claims.